# IN THE UNITED STAT9ES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONNELL RICHMOND,**

      **Petitioner,**

**v.**                                            **Civil Action No. 2:10cv95**
                                                                 **(Judge Bailey)**

**MR. BARLOW, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

On July 22, 2010, the *pro se* petitioner, Donnell Richmond, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is currently confined at the Eastern Regional Jail pending a revocation hearing before the US Parole Commission. In the petition, the petitioner challenges forfeiture of street time when his parole was revoked. On September 20, 2010, the respondent filed a Motion to Dismiss or for Summary Judgment and a Response to the Show Cause Order. On September 22, 2010, a Roseboro Notice was issued, and on October 14, 2010, the petitioner filed a reply

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, et seq., is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 21, 1986, the Superior Court for the District of Columbia sentenced the petitioner to a combined term of twenty years for weapon offenses. (Doc. 21-1). On March 31, 1988, while

serving this sentence at a halfway house, the petitioner escaped custody and was subsequently convicted of prison breach. On September 9, 1988, the Superior Court imposed a sentence of sixty months, suspended as to all but six months consecutive to the 1986 sentence, followed by five years' supervision. (Doc. 21-3). On September 18, 1989, the D.C. Board of Parole ordered the petitioner paroled to the consecutive six-month sentence. (Docs. 21-4, 21-5).

On August 27, 1991, after the petitioner's release to the community, the D.C. Parole Board issued a warrant for his arrest for administrative violations. The warrant was executed on August 31, 1991. (Doc. 21-7). The Board revoked parole October 16, 1991. (Doc. 21-8).

On March 11, 1992, while serving the violator term, the petitioner escaped custody. He turned himself in the next day and was not charged after he stated he did not return because he drank to excess and fell asleep. (Doc, 21-9).

On May 8, 1995, the petitioner escaped again and was not returned to custody until July 2, 1995. He was convicted of prison breach, and on April 8, 1996, he was sentenced to a consecutive three-term. (Doc. 21-10).

The petitioner was subsequently transferred to the jurisdiction of the U.S. Parole Commission pursuant to the National Capital Revitalization and Self-Government Improvement Act of 997, Public Law No.. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (formerly 24-1231). The Commission conducted a review hearing for the petitioner in June 2001 (Doc. 21-11). Due to good time deductions, the petitioner was released mandatorily from his 1986 sentence to his 1996 consecutive sentence on July 31, 2001.[1] (Doc. 21-12). By notice

---

[1] On mandatory release, the individual is discharged from prison to community supervision as if on parole. 28 C.F.R. § 2.87(b). See 18 U.S.C. § 4164.

of action dated August 16, 2001, the Commission ordered his parole on December 10, 2001, from his 1996 sentence. (Doc. 21-13).

On October 8, 2002, the Commission issued a warrant for administrative violations of illicit drug use, failure to submit to drug testing, and failure to report change in residence. The warrant was executed on October 21, 2002. (Doc. 21-15). By notice of action dated January 28, 2003, the Commission revoked the petitioner's mandatory release for eight months and forfeited time spent on release. (Doc. 21-16). The petitioner was paroled on June 23, 2003. (Doc, 21-17).

On October 7, 2005, the Commission issued a warrant for both administrative and misdemeanor law violations. The warrant was executed on September 7, 2006. (Doc. 21-18). Following a March 5, 2007 hearing, the Commission revoked the petitioner's parole for 22 months and forfeited his street time. (Doc. 21-19). The 22-month term was later extended three months for institutional violations. (Doc. 21-20). The petitioner was paroled May 25, 2008, with a full-term date of November 2, 2010. (Doc. 21-21).

On February 12, 2010, the Commission issued another violator warrant based on additional law and administrative violations. (Doc. 21-22). The warrant was executed on April 26, 2010. A supplemental warrant issued July 1, 2010, added additional law and administrative violations. (Doc. 21-22). On July 9, 2010, the Commission made a probable cause finding based on the petitioner's new convictions. (Doc. 21-24). The Commission proposed an expedited revocation whereby the petitioner would agree to a sixteen-month revocation and street-time forfeiture based on a finding that he committed all seven charged violations. The petitioner declined this proposal, and his revocation hearing is pending.

## II. CLAIMS OF PETITION

The petitioner maintains that his original sentence was for no more than twenty years, and the same has expired. He further alleges that he is entitled to credit for his "street time" pursuant to the Decision in Noble v. United States, 887 F.Supp. 11 (D.C. Cir. 1995).

### III. RESPONDENT'S REPLY

The respondent argues that to the extent that the petitioner is challenging a prior decision forfeiting his street time in conjunction with revocation proceedings, he failed to exhaust administrative remedies. Moreover, the respondent contends that the decision in Noble does not compel the restoration of his street time.

### IV. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

4

the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

5

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

**A. Exhaustion**

An individual seeking judicial review of an agency action (including parole decisions) must first have exhausted appeals available within the agency. McKart v. United States, 395 U.S. 185, 194-95 (1969). Furthermore, it is the petitioner's burden to prove that he did so. Darr v. Burford, 339 U.S. 200, 218-19 (1950). This requirement applies to habeas proceedings. Thus, a petitioner may not seek habeas relief unless and until he has exhausted all other means of obtaining the relief

sought. 28 U.S.C. § 2254(c).

The purpose of an administrative appeal is to review and, if necessary, to correct the decision below. Parsisi v. Davidson, 405 U.S. 34, 37 (1972)(exhaustion allows the administrative agency to apply its expertise and, where necessary to correct its own errors to moot judicial controversies); Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976)(holding that the administrative procedure must be given "an opportunity to succeed" before the claims are brought before a judicial tribunal); Merki v. Sullivan, 853 F.2d 599, 600-01 (8th Cir. 1988)(offender's challenge to Commission's decision is procedurally barred for failure to bring error to the attention of the National Appeals Board).

In the instant matter, to the extent that the petitioner is challenging the March 26, 2007, notice of action ordering forfeiture of his street time the petitioner does not even claim to have filed an administrative appeal of that decision despite the notice of his rights to the same.[2] In addition, the exhibits tendered by the respondent failed to establish that an appeal was filed  Accordingly, there being no evidence to the contrary, the court must conclude that no appeal was filed, and exhaustion has not been completed. Furthermore, his current revocation proceeding remains pending, and therefore, there is no new decision for this court to review. Finally, even if the petitioner had exhausted his administrative remedies, his argument that he is entitled to street credit is not accurate.

**B. Street Time Credit**

Pursuant to a 1932 District of Columbia ("D.C.") statute, a parolee is entitled to no credit on his sentence for the time spent under parole supervision. D.C. Code § 24-206(a)). Therefore, whenever parole is revoked, the parolee's sentence is prolonged by the amount of street time that

---

[2]The Notice of Action clearly state that none of the time the petitioner spent on parole shall be credited. In addition, it advised the petitioner in bold print that the decision is appealable and explains how to obtain appeal forms and when they must be filed. (Doc. 21-19, pp. 1, 3).

7

is lost. Davis v. Moore, 772 A.2d 204 (D.C. 2001)).

However, the Good Time Credits Act ("GTCA") was enacted in 1987 and provided for credit toward the service of a sentence for time spent in custody or on parole. (D.C. Code § 24-431(a)). At that time, the D.C. Corporation Counsel interpreted the Act as effecting an implicit repeal of the 1932 statute. Therefore, the D.C. Department of Correction implemented a regulation which allowed parole violators to retain credit for street time upon revocation of their parole. Nonetheless, the U.S. Parole Commission disagreed with Corporation Counsel's interpretation of the Act, and for those offenders who fell within its jurisdiction, it continued to deny street credit upon revocation of parole. Davis v. Moore, 772 A.2d at 209-210. This led to a situation in which D.C. offenders confined in D.C. institutions would receive street time credit upon revocation, but such offenders in federal institutions would not receive such credit.

This disagreement, and the resulting disparity, was litigated in the Ninth Circuit and in the D.C. Circuit. In Tyler v. United States, 929 F.2d 451 (9th Cir. 1991), the Ninth Circuit found that the Corporation Counsel had incorrectly interpreted the statute. However, the D.C. Department of Corrections did not change its regulations. (Id.).

This issue was then litigated in Noble v. United States Parole Comm'n, 887 F.Supp 11 (D.D.C. 1995). In Noble, the United States District Court for the District of Columbia granted Noble's petition, concluding that D.C. Code 24-431(a) authorizes credit for street time even when a prisoner's parole has been revoked. Were this case still good law, the petitioner might be entitled to habeas relief. However, the US Parole Commission appealed, and the United States Court of Appeals for the District of Columbia certified a question of law[3] to the District of Columbia Court

---

[3] Specifically, the question was:
    Under District of Columbia law, given the facts described below, did

of Appeals pursuant to D.C. Code § 11-723. The District Court of Appeals then held that no repeal had been effected by the enactment of the GTCA and that the rule mandating forfeiture of street time in § 24-206, remained in effect. United States Parole Comm'n v. Noble, 693 A.2d 1084, 1085 (D.C. 1997), 711 A.2d 85 (D.C. 1998) (*en banc*)). Therefore, the U.S. Parole Commission correctly revoked the petitioner's street time, and there is no basis for a grant of his petition.

Although the petitioner does not raise the issue, the undersigned is aware that a bill was passed by the D.C. Council known as the "Equitable Street Time Credit Amendment Act of 2008" and took effect on or about May 22, 2009. (D.C. Code § 24-406). Of significance, the Act provides as follows:

> (C)(1) Except as provided in paragraphs (2) and (3) of this subsection, a parolee shall receive credit toward completion of the sentence for all time served on parole.
>
> > (2) If a parolee is convicted of a crime committed during a period of parole, the Commission:
> >
> > > (A) Shall order that the parolee not receive credit for that period of parole if the crime is punishable by a term of imprisonment of more than one year; or
> > >
> > > (B) Shall order that the parolee not receive credit for that period of parole if the crime is punishable by a term of imprisonment of one year or less unless the Commission determines that such forfeiture of credit is not necessary to protect the public welfare.
> >
> > (3) If, during the period of parole, a parolee intentionally refuses or fails to respond to any reasonable request, order, summons, or warrant of the Commission or any member or agent of the Commission, the Commission may order that the parolee not

---

the United States Parole Commission properly interpret sections 24-206(a) and 24-431(a) of the District of Columbia Code in deciding that, after revocation of a person's parole, time that the person spent on parole before revocation cannot be credited against his sentence?

9

> receive credit for the period of time that the Commission determined that the parolee failed or refused to respond to such a request, order, summons, or warrant.

Despite the passage of this Act, the pending petition for writ of habeas corpus still is due to be dismissed because the Act is not retroactive. Specifically, the enrolled act provides that "The provisions of subsection (c) of this action (quoted above) shall apply only to any period of parole that is being served on or after the effective date of the Equitable Act, and shall not apply to any period of parole that was revoked prior to the effective date of the Equitable Act." Because the period of the petitioner's parole that has been revoked occurred prior to the effect date of the Act, he cannot receive credit toward the completion of his sentence for the time he spent on parole.

Finally, to the extent that the petitioner is attempting to argue that street-time forfeiture violates the Eighth Amendment prohibition against cruel and unusual punishment, there is no legal support for that argument. Courts have consistently held that street-time forfeiture upon parole revocation does not violate the Constitutional prohibition against cruel and unusual punishment. Campbell v. U.S. Parole Commission, 563 F.Supp.2d 23, 26 (D.D.C. 2008) ("the attachment of a condition that a violation of parole would result in loss of credits towards the completion of his sentence does not violate Eighth Amendment standards."). See also Hall v. Welch, 185 F.2d 525, 527 (4th Cir. 1951).

## VI. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Doc19) be **GRANTED,** the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**, and the petitioner's Motion for Recompense (Doc. 17) be **DENIED AS MOOT**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Preston P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: 1-6-2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE